[No. 10059–6–III. Division Three. April 17, 1990.]

BRIAN D. BROCK, ET AL, *Plaintiffs,* v. JAMES D. TARRANT, ET AL, *Appellants,* ZITTINGS REALTY, INC.,
*Respondent.*

*Allan Galbraith* and *Carlson & Drewelow,* for appellants.

*Phillip R. Johnson, Steve Smith,* and *Johnson & Johnson,* for respondent.

GREEN, A.C.J.—Brian D. and Cynthia L. Brock purchased a home in Wenatchee from James D. and Sharon E. Tarrant. Subsequently, they learned the home contained urea formaldehyde foam insulation. They filed suit against the Tarrants, Zittings Realty and Century 21 Gold Key Realty for rescission or, in the alternative, damages. Cross claims were filed *inter se* between the Tarrants and Zittings. Before trial, the Brocks settled their claims against the Tarrants and Century 21; the sale was rescinded and the Brocks assigned their claims against Zittings to the Tarrants. After a bench trial, the court concluded Zittings was not negligent and awarded it $22,278.89 in costs and attorney fees. The Tarrants appeal.

The issues presented concern the court's conclusion that Zittings was not negligent and the award and reasonableness of attorney fees. We affirm.

The unchallenged findings reveal these facts. In 1977 the Tarrants insulated their home with urea formaldehyde foam insulation purchased from Sears, Roebuck & Company and installed by Overhead Door Company of Wenatchee, Inc. The insulation adversely affected the health of the Tarrant family and Mrs. Tarrant suffered a miscarriage. They moved out of the home in July 1984 and rented it to

tenants for about 2 years. In January 1985 they sued Sears and Overhead Door for damages caused by the insulation.

On May 16, 1987, the Tarrants listed the property for 2 months with Gary Gavin of Mullen–Korfiatis Realtors. The Tarrants did not disclose to Mr. Gavin the existence of the formaldehyde insulation, the resulting adverse health effects, or the lawsuit against Sears. In the listing agreement, after discussions with Mr. Gavin, they stated that nothing about the property required repair, replacement or attention.

On May 23, 1987, the Tarrants executed a contract to sell the property to David and Karen Pettner. The Tarrants again failed to disclose the existence of the formaldehyde insulation, health problems or the pending lawsuit against Sears. The Pettners' realtor, Kathleen Emerick, asked the Tarrants whether there were any defects in the property; they mentioned only some wiring and an appliance. Later the sale was rescinded because the Pettners were unable to obtain financing.

When the listing agreement expired, the Tarrants listed the property with Zittings Realty through its agent, Lorraine Carbury–Noakes. Ms. Carbury–Noakes knew from the prior listing there was new insulation in the home, but did not ask what type. Prior to signing the listing, Ms. Carbury–Noakes reviewed its provisions with the Tarrants, including a warranty that nothing on the property required repair, replacement or attention. Again the Tarrants did not disclose the existence of the formaldehyde insulation, health problems or the lawsuit against Sears. After the listing agreement was signed, Ms. Carbury–Noakes met Mrs. Tarrant at the property. Mrs. Tarrant inquired if she knew they had a lawsuit pending against Sears. Ms. Carbury–Noakes asked whether the lawsuit would affect a new purchaser of the property and Mrs. Tarrant replied, "definitely not". Mrs. Tarrant did not discuss the nature of the lawsuit or mention the insulation or the health problems. Ms. Carbury–Noakes made no further investigation.

On August 7, 1987, the Tarrants executed a real estate sales agreement with Brian and Cynthia Brock in the presence of Fred Zitting, Ms. Carbury–Noakes and Fran Glessner, an agent for Century 21 Gold Key Realty. Ms. Glessner asked the Tarrants if there were any defects in the property. Mr. Tarrant stated one of the appliances did not work. Ms. Glessner replied that was on the listing agreement and asked if there was anything else. The Tarrants said "no". Mr. Zitting repeated these inquiries; the Tarrants again said "no". At Mr. Zitting's request, the Tarrants initialed the warranty provision stating they knew of no material structural defects, and the contract was executed.

The Brocks previously saw a formaldehyde insulation warning label on a mobile home and decided not to purchase it for that reason. Mrs. Brock was pregnant when their offer to purchase was presented. When the sale was closed on September 29, 1987, the Tarrants never mentioned the formaldehyde insulation.

On March 2, 1988, the Tarrants' attorney wrote Zittings informing it of the discovery of the formaldehyde insulation by the Brocks and their demand the sale be rescinded. The Tarrants refused. On April 15 the Brocks commenced this action against the Tarrants, Zittings Realty and Darlene and Leoid Henson, d/b/a Century 21 Gold Key Realty, for rescission or, alternatively, damages to the real property resulting from the formaldehyde insulation. In addition, they sought damages for outrage, emotional distress, violation of the Consumer Protection Act and attorney fees and costs. Zittings and Tarrants cross–claimed against each other. On March 17, 1989, the Brocks settled with the Tarrants and Century 21. Under the terms of the settlement, the sale to the Brocks was rescinded and they conveyed the property back to the Tarrants. Additionally, the Tarrants paid them $5,000 and Century 21 paid $3,500. In return, the Brocks assigned their remaining causes of action against Zittings to the Tarrants.

At trial it was stipulated that the insulation was a material defect and rescission was justified. The primary issues

for trial were whether (1) the Tarrants revealed to Zittings the presence of the formaldehyde insulation in the home, (2) Zittings breached a duty to the Tarrants or the Brocks and alternatively Zittings should be required to contribute to the settlement based on comparative fault, and (3) Zittings was entitled to its costs and attorney fees.

The court found: Zittings relied on the Tarrants' representations in the listing agreement that nothing about the property required repair, replacement or attention and their statement they knew of no material structural defects when the Brock contract was signed. Zittings also relied on Mrs. Tarrant's statement to Ms. Carbury–Noakes that the Sears lawsuit definitely would not affect a new purchaser of the property. At that time the Tarrants knew formaldehyde was a harmful substance. They had ample opportunity to disclose to Zittings the presence of the formaldehyde insulation, its adverse health effects and that it was the subject of their Sears lawsuit. Had the Tarrants done so, Zittings would have told the Brocks. In light of the Tarrants' conduct, there was nothing to alert Zittings to the possibility their statements might be false. In these circumstances, Zittings had no duty to the Brocks. The Tarrants' failure to disclose was detrimental to Zittings because it exposed or involved Zittings in litigation with the Brocks. The court also found Zittings incurred $22,278.89 in costs and attorney fees as a result of the Tarrants' actions.

Based upon the findings, the court concluded:

3.8 Tarrants should be and are estopped from asserting that Zitting's breached its duty of reasonable care to Brocks.

. . . .

3.10 Tarrants have failed to prove that Zitting's breached any duty it owed to Tarrants or Brocks.

3.11 Tarrants should take nothing by their cross–claim against Zitting's.

3.12 Tarrants, as assignee of the claims of Brocks, should take nothing against Zitting's.

3.13 Under the facts of this case, Carbury–Noakes and Zitting's were entitled to rely upon the statements and representations of Tarrant.

. . . .

3.15 Zitting's is entitled to award of attorney fees and costs incurred in this matter under the theory of equitable indemnity, based upon the misrepresentation by Tarrant to Carbury–Noakes at the time of execution and in the Zitting's Listing Agreement and the Brock [real estate purchase and sale agreement].

3.16 Zitting's should be awarded Judgment against Tarrants in the sum of Twenty–two Thousand Two Hundred Seventy–eight Dollars and Eighty–nine Cents ($22,278.89) for the expenses incurred by Zitting's in this litigation.

This appeal follows.[1]

First, the Tarrants contend the court erred in refusing to enter findings that Zittings failed to follow the standard of care for realtors toward purchasers in the Chelan–Douglas County area. They argue that Ms. Carbury–Noakes' failure to investigate the Sears lawsuit when she learned of its existence, her failure to ascertain what type of new insulation had been added to the property, and her reliance on the Mullen–Korfiatis listing when preparing the Zittings' listing were violations of the standard of care that proximately caused the Brocks' damages. *Hoffman v. Connall*, 108 Wn.2d 69, 736 P.2d 242 (1987). Consequently, they argue, the court erred by concluding the Tarrants failed to prove Zittings breached any duty to the Tarrants or the Brocks and that Ms. Carbury–Noakes and Zittings were entitled to rely on the statements and representations of the Tarrants. We find no error.

A broker's duty to a *purchaser* of real property is described in *Hoffman*, at 75:

> The underlying rationale of [a broker's] duty to a buyer who is not his client is that he is a professional who is in a unique position to verify critical information given him by the seller. His duty is to take reasonable steps to avoid disseminating to the buyer false information. The broker is required to

---

[1]We note the Tarrants have not specifically assigned error to any finding of fact or conclusion of law. RAP 10.3(g). When it is apparent from their argument which items are asserted as error, we have analyzed the issue. In addition, the Tarrants failed to comply with RAP 10.4(c) which requires a party presenting an issue involving the study of a finding of fact to reproduce the material portions thereof in the brief or as an appendix. *Thomas v. French*, 99 Wn.2d 95, 99–101, 659 P.2d 1097 (1983).

employ a reasonable degree of effort and professional expertise to confirm or refute information from the seller which he knows, or should know, is pivotal to the transaction from the buyer's perspective.

(Citations omitted.) *Tennant* [*v. Lawton*, 26 Wn. App. 701, 706, 615 P.2d 1305 (1980)]; *see also McRae v. Bolstad*, 32 Wn. App. 173, 646 P.2d 771 (1982), *aff'd*, 101 Wn.2d 161, 676 P.2d 496 (1984).

Thus, "a real estate broker must act as a professional, and will be held to a standard of reasonable care", but need not guarantee every statement by the seller. *Hoffman,* at 77.

Here, the experts differed as to whether Ms. Carbury–Noakes breached the realtor's standard of care. There is substantial evidence that she did not. Accordingly, conclusion of law 3.10 that the Tarrants failed to prove Zittings breached any duty it owed to the Tarrants or the Brocks is correct. Likewise, conclusion of law 3.13 that "[u]nder the facts of this case, Carbury–Noakes and Zitting's were entitled to rely upon the statements and representations of Tarrant" also is correct. We find no error.

■ Furthermore, the court's conclusion that the Tarrants are estopped from asserting Zittings breached its duty of reasonable care to the Brocks supports its decision. The unchallenged findings establish that Zittings justifiably relied on the Tarrants' representations and was injured as a result. This satisfies the elements of equitable estoppel. *See McDaniels v. Carlson*, 108 Wn.2d 299, 308, 738 P.2d 254 (1987); *Liebergesell v. Evans*, 93 Wn.2d 881, 889, 613 P.2d 1170 (1980). It was the Tarrants, who knew of the defective insulation and its health hazards, who had the duty to reveal those facts. It would not accord with reason to permit the Tarrants a recovery from Zittings for failing to discover facts the Tarrants already knew and failed to disclose. Thus, the Tarrants' additional contention they are entitled to contribution from Zittings on the basis of comparative fault is without merit since the court found Zittings was without fault.

Second, the Tarrants contend the court erred in awarding attorney fees to Zittings on the basis of equitable

indemnity. They take the position that since the Brocks were privy to the events involving the Tarrants and Zittings which gave rise to the litigation, Zittings is not entitled to fees under the theory of equitable indemnity. *Armstrong Constr. Co. v. Thomson,* 64 Wn.2d 191, 390 P.2d 976 (1964); *Manning v. Loidhamer,* 13 Wn. App. 766, 538 P.2d 136, *review denied,* 86 Wn.2d 1001 (1975). We find no error.

Generally, attorney fees may be awarded only if authorized by contract, statute, or recognized ground in equity. *Pennsylvania Life Ins. Co. v. Department of Empl. Sec.,* 97 Wn.2d 412, 413, 645 P.2d 693 (1982). An equitable ground arises, however, when the natural and proximate consequences of a defendant's wrongful act involve a plaintiff in litigation with others and the action generating the expense is instituted by a third party not connected with the original transaction. *Armstrong,* at 195. The factors creating liability are stated in *Manning,* at 769:

> (1) a wrongful act or omission by A [Tarrants] toward B [Zittings]; (2) such act or omission exposes or involves B in litigation with C [Brocks]; and (3) C was not connected with the initial transaction or event, *viz.,* the wrongful act or omission of A toward B.

*See also Dauphin v. Smith,* 42 Wn. App. 491, 494, 713 P.2d 116 (1986). The Tarrants' contention relates only to the third factor.

It is clear from unchallenged findings that the Tarrants' nondisclosure began when they listed the property with Mullen–Korfiatis. It continued when they listed the property with Zittings on July 24, 1987, and was exacerbated later that day when Mrs. Tarrant told Ms. Carbury–Noakes the Sears lawsuit would "definitely not" affect a subsequent purchaser. Had Zittings known of the formaldehyde insulation, it would have disclosed it on its listing. The Tarrants' failure to reveal the defect so it would show on the Zittings' listing is what involved Zittings in litigation with the Brocks. The Brocks were not connected with the Tarrants' conduct until August 5, 1987, when they offered to buy the

property. Had they known of the defect, they would not have purchased the home.

The Tarrants argue the Brocks were privy to their failure to disclose the formaldehyde insulation problem at the time the sales contract was signed and again at closing. However, their argument is undermined by the reasoning in *North Pac. Plywood, Inc. v. Access Road Builders, Inc.,* 29 Wn. App. 228, 236–37, 628 P.2d 482, *review denied,* 96 Wn.2d 1002 (1981):

> The wrongful act which gave rise to this litigation, however, was not the assignment contract. It was the fraud committed by Access in inducing Walch Logging to accept the assignment before North Pacific even became involved in the transaction. The award of attorney's fees to Walch Logging was therefore proper. *Wilber v. Western Properties,* 22 Wn. App. 458, 589 P.2d 1273[, *review denied,* 92 Wn.2d 1017] (1979).

Similarly, here the Tarrants, in effect, induced Zittings to unknowingly list and sell defective property. The court was correct when it found the Tarrants' crucial nondisclosure predated Zittings' involvement. It supports the conclusion Zittings is entitled to an award of attorney fees and costs under the theory of equitable indemnity. The cases cited by the Tarrants are not applicable here.

Third, the Tarrants contend the court erred in awarding Zittings its attorney fees for the entire trial. They argue fees incurred in seeking indemnity are not recoverable after the settlement in which the Brocks' claims were assigned. This, they argue, is because the assignment was taken only to enhance the Tarrants' contribution claim against Zittings and the trial was limited to that claim and Zittings' cross claim for indemnity. On the other hand, Zittings argues it was required to prepare for trial as though the Brocks remained in the litigation and arguments regarding the Brocks' claims were made the day trial commenced. Defense of the claims of the Brocks and the Tarrants involved the same issues and work product and there was no reasonable means of segregating the expenses between the claims. We agree with Zittings.

An award of attorney fees and costs based on equitable indemnity is for defense expenses incurred in the litigation brought by the third party. *Manning,* at 769. However, fees are not recoverable in separate indemnity actions by the innocent defendant against the wrongdoer. *Broten v. May,* 49 Wn. App. 564, 573, 744 P.2d 1085 (1987), *review denied,* 110 Wn.2d 1003 (1988); *North Pac. Plywood,* at 236. Generally, attorney fees and costs should be awarded only for those services related to the causes of action which allow for fees. *Fisher Properties, Inc. v. Arden–Mayfair, Inc.,* 106 Wn.2d 826, 850, 726 P.2d 8 (1986). Difficulty or complexity does not ordinarily justify a failure to segregate attorney fees. *Fisher,* at 850; *Broten,* at 574.

Here, however, the pleadings show that when the Brocks assigned their claims to the Tarrants, Zittings was nonetheless required to prepare for trial as though the Brocks remained in the litigation; more than the cross claims for contribution and indemnification were at issue. This is first illustrated in the Tarrants' trial memorandum in which they argued the Brocks did not elect their remedy of rescission in the settlement agreement because they assigned their causes of action to the Tarrants. In response, Zittings submitted trial memoranda on the issues of election of remedies, assignment of a cause of action for emotional distress, and a supplemental memorandum concerning rescission and duties of real estate brokers. The clerk's minutes show that on the first day of trial, Zittings moved to dismiss the claim of emotional distress. The motion was argued and granted. After further argument, it was stipulated that the insulation constituted a material defect in the property which justified rescission. The trial then proceeded on the remaining issues of whether the Tarrants disclosed the defects, and whether Zittings breached the realtor's standard of care.

 The court found Zittings' defense of the claims of the Brocks and the Tarrants involved the same issues and there is no reasonable means of segregating the expenses incurred by Zittings in defending the claims of the Brocks

and the Tarrants and in seeking indemnity from the Tarrants. Since no error is assigned to these findings, they are verities on appeal. *Davis v. Department of Labor & Indus.,* 94 Wn.2d 119, 123, 615 P.2d 1279 (1980); RAP 10.3(g). Thus, Zittings was required to defend itself against the same allegations of negligence (Ms. Carbury–Noakes' "failure to investigate") whether to the Tarrants or the Brocks. It is evident the Tarrants' failure to disclose involved Zittings in the litigation. We find no error.

Finally, the Tarrants contend that in any event the court erred in ruling the award of $22,278.89 attorney fees and costs to Zittings was reasonable. We disagree.

RCW 4.84.020 provides that "[i]n all . . . cases in which attorneys' fees are allowed, the amount thereof shall be fixed by the court at such sum as the court shall deem *reasonable . . .*". (Italics ours.) *See Allard v. First Interstate Bank,* 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989). The reasonableness of the award is subject to appellate review for abuse of discretion. The trial court abuses its discretion only when no reasonable person would take the position it adopted. *Allard,* at 148.

Here, the court found the fees were incurred "as a result of Tarrants' actions" and "were reasonable and necessary for the proper presentation of this case." Thus, in its equitable award of attorney fees, the court made Zittings whole. We have likewise reviewed the affidavits of Zittings' trial counsel and find no abuse of discretion in the court's award.

The Tarrants' other contentions relating to the attorney fee award are without merit.

Affirmed.

THOMPSON and SHIELDS, JJ., concur.

Reconsideration denied June 5, 1990.

Review denied at 115 Wn.2d 1016 (1990).